# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD LEON BOONE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 2:12-1370 |
| | ) Magistrate Judge Cynthia Reed Eddy |
| MR. NOSE; *ET AL.*, | ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER[1]

On September 21, 2012, Plaintiff, Edward Leon Boone, an inmate presently incarcerated at the State Correctional Institution at Greensburg, Pennsylvania, commenced this civil action against various individuals and/or agents employed with the Pennsylvania Department of Corrections (DOC) and the Pennsylvania Board of Probation and Parole (the Board). On December 14, 2012, Defendants filed a Motion to Dismiss (ECF No. 23) and a Brief in Support (ECF No. 24). On December 17, 2012, this Court issued a three-page Order for Plaintiff to respond to the pending motion to dismiss (ECF No. 25). That Order gave Plaintiff the opportunity to file an amended complaint with respect to the deficiencies set forth in the pending motion to dismiss. On December 18, 2012, Plaintiff filed a Declaration wherein he recited facts of record and attached various exhibits in support (ECF No. 26).

On January 16, 2013, Plaintiff filed an Amended Complaint (ECF No. 34). On January 18, 2013, the Court entered an Order striking the Amended Complaint and informed Plaintiff that an amended complaint must encompass all claims and all parties in one stand alone document

---

[1] The parties have consented to jurisdiction by a United States Magistrate Judge. *See* ECF

1

and that it must set forth specific allegations against each and every named defendant. On January 25, 2013, Plaintiff filed a second Amended Complaint (ECF No. 35).

On February 9, 2013, Defendants filed a Motion to Dismiss (ECF No. 36) along with a Brief in support thereof (ECF No. 37). On December 19, 2012, this Court issued another Order for Plaintiff to respond to the pending motion. On February 14, 2013, Plaintiff filed a Response to the pending motion (ECF No. 39). For the reasons set forth below, Defendants' Motion will be granted. Because Plaintiff previously was given an opportunity to file an amended complaint, this Court is not required to provide further leave to amend. *See* Shelley v. Patrick, 481 F. App'x 34, 36 (3d Cir. 2012). Moreover, any opportunity to amend would be futile.

## A. Standard of Review

Presently pending before the Court is Defendants' Motion to Dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual

---

Nos. 18 and 20. *See also* 28 U.S.C. § 636(c)(1).

allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, 556 U.S. 662 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir.1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293

3

F.3d at 688).

In addition, this Court must review Plaintiff's Complaint in accordance with the amendments promulgated in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). Pertinent to the case at bar is the authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims. Specifically, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

In addition, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed in forma pauperis (IFP), *i.e.*, without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons who are proceeding in forma pauperis and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Plaintiff is a prisoner and Defendants are officers or employees of governmental entities. In addition, Plaintiff has been granted leave to proceed *in forma pauperis* (ECF No. 5). Thus his allegations must be reviewed in accordance with the directives provided in 28 U.S.C. §§ 1915A & 1915(e). In reviewing complaints under 28 U.S.C. §§ 1915A & 1915(e), a federal court

4

applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

### B. Plaintiff's Allegations and Facts of Record

Plaintiff alleges that on May 17, 2012, the Board granted him release on parole. Prior to his actual release from custody, Marie Denny, the mother of some of Plaintiff's children, informed Captain Nose that she had received a threatening letter from Plaintiff. The letter stated he was going to shoot Ashley Efaw (the mother of Plaintiff's other children) in the face when he got out on parole. It further stated that Marie's boyfriend had to go because the parole officer would be coming to inspect the house. After Mrs. Denny faxed Captain Nose a copy of the letter, he interviewed Plaintiff who allegedly confessed to writing the letter.

On June 21, 2012, Plaintiff received Misconduct Report B526205 charging him with threatening another person and unauthorized use of the mail (ECF No. 26-1, p. 1). On July 5, 2012, Plaintiff was found guilty of the charges and received sixty (days) disciplinary time. Due to the misconduct, on July 16, 2012, the Board rescinded its Order granting Plaintiff release on parole and established a new parole review date of June, 2013. Plaintiff appealed the misconduct and on September 11, 2012, his misconduct was expunged and the charges were exonerated based on evidence that another person had written the letter (ECF No. 26-6, p. 1).

On September 13, 2012, Plaintiff filed Grievance No. 428200 claiming that the Board prematurely rescinded his parole before his misconduct appeal was completed. On September 19, 2012, Plaintiff received the following response.

> In regards to your grievance, you are requesting compensatory damages for violations of your 8th and 14th Amendments. Your contention is that you should have been released on parole due to your being exonerated from a misconduct.

5

Mr. Boone, although Misconduct B526205 was exonerated at the second level appeal on September 11, 2012, you were initially found guilty by the Hearing Examiner on June 28, 2012. The Department of Corrections has an obligation to report all significant changes to the Board of Probation and Parole. Parole was notified of the misconduct and the Hearing Examiner's findings. As a result of the notification, you received a Board Action dated 7/16/2012, that you were being denied parole and established a [new] review date. Since the misconduct had been exonerated on September 11, 2012, the Board of Probation and Parole was again notified of the change to your status. At current, you are pending Board action that will determine your status based on the information that the misconduct was exonerated. You are reminded that Parole is a privilege and that there is no entitlement to Parole. In addition, you are reminded that the Department of Corrections makes recommendations regarding parole; however, Parole retains discretion on paroling actions.

Based on the above information, grievance denied.

ECF No. 26-2, p. 2.

This civil action was filed in this Court on September 21, 2012. On December 6, 2102, Plaintiff received Notice of Board Decision, which provides as follows.

DUE TO TIME LAPSE SINCE LAST REVIEW, LIST FOR REVIEW ON NEXT AVAILABLE DOCKET.

*MEMO 10/12/2012*

PAROLE VIOLATION MAX DATE: 06/28/2014

ECF No. 32-1, p. 2.

### C. Plaintiff's Claims and Liability under 42 U.S.C. § 1983

To state a claim for relief under section 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds,*

Daniels v. Williams, 474 U.S. 327, 330-331 (1986). A plaintiff fails to allege a section 1983 claim if the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. *See also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988). However, at a minimum such liability may be imposed only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the

7

offending subordinate. Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

In the case at bar, Plaintiff fails to allege section 1983 liability against any Defendant and the court is satisfied that no relief could be granted under any set of facts that could be proved consistent with his allegations.

1. Parole Denial

As an initial matter, the only named Defendant relevant to Plaintiffs allegations concerning his parole denial is the Pennsylvania Board of Probation and Parole (the Board). The Board cannot be sued because "it is not a 'person' within the meaning of Section 1983." Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977). To this end, in Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court concluded that state agencies are not "persons" subject to liability in § 1983 actions brought in federal court. Accordingly, because the Parole Board is clearly an agency or arm of the Commonwealth of Pennsylvania, it is not a person and may not be sued under § 1983. *Accord* Edwards v. PA Bd. of Probation and Parole, 248 F. App'x 339 (3d Cir. 2007) (holding that a prisoner may not seek money damages against the Parole Board as such claims are barred by the Eleventh Amendment). In addition, to the extent that Plaintiff is seeking to impose liability against Catherine McVey, Chairperson of the PBPP, she is entitled to absolute immunity for her actions in adjudicating Plaintiff's parole determinations. *See* Keller v. PA Bd. of Probation and Parole, 240 F. App'x 477, 479 (3d Cir. 2007); Wilson v. Rackmill, 878 F.2d 772, 776 (3d Cir. 1989); Thompson v. Burke, 556 F.2d 231, 237 (3d Cir. 1977). Moreover, it would be futile to allow Plaintiff to amend his complaint yet again as Plaintiff has failed to state any constitutional violation associated with the Board's actions.

While it is extremely unclear exactly what grounds Plaintiff is raising in regards to his parole decisions, he repeatedly claims that Defendants violated his due process rights. As an initial matter, it must be noted that Plaintiff does not have a constitutionally protected interest in release on parole. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). Further, the Pennsylvania Probation and Parole Act does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole or reparole prior to the expiration of their maximum terms.[2] Pennsylvania law unambiguously provides that a prisoner is not entitled to release from prison until the expiration of his maximum sentence.[3] Nothing in the Pennsylvania Parole Act (or any other provision of Pennsylvania law) requires the Board to release a prisoner on parole prior to the expiration of his maximum term. The Board has complete discretion to determine whether an inmate is sufficiently rehabilitated such that he will be permitted to serve the remainder of his sentence outside the prison walls on parole. Although a prisoner is eligible for parole at the end of his minimum term, nothing in Pennsylvania law or the United States Constitution requires a prisoner to be released at such time.

---

[2] See, e.g., McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993); Rogers v. Pennsylvania Bd. of Probation and Parole, 555 Pa. 285, 724 A.2d 319 (1999) (holding that the grant of parole for Pennsylvania prisoners is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy).

[3] A prisoner's sentence is his maximum term. Krantz v. Pennsylvania Bd. of Probation & Parole, 86 Pa. Commw. 38, 41, 483 A.2d 1044, 1047 (1984). The significance of the minimum sentence is that it establishes a parole eligibility date; the only "right" that can be asserted upon serving a minimum sentence is the "right" to apply for parole and to have that application duly considered by the Board. Id.

It appears that Plaintiff is arguing that the Board violated his due process rights by rescinding its prior grant of parole based on the misconduct for which he ultimately was exonerated. To determine what due process rights Plaintiff was entitled to, it is necessary to determine his status at the time the Board rescinded its prior grant of parole. There is no question that a "parolee" has a vested liberty interest in the limited liberty offered by parole that cannot be taken away without affording the parolee minimal due process guarantees of prior notice and an opportunity to be heard. Morrissey v. Brewer, 408 U.S. 471. However, a mere grant of parole by itself does not vest a prisoner with any protected liberty interest in that parole. Jago v. Van Curen, 454 U.S. 14 (1981). A prisoner does not attain the status of a "parolee" until the grant of parole is actually executed. Franklin v. Pennsylvania Board of Probation and Parole, 83 Pa. Commw. 318, 476 A.2d 1026 (1984); Jones v. Pennsylvania Board of Probation and Parole, 81 Pa. Commw. 194, 473 A.2d 247 (1984). In Pennsylvania, a grant of parole is not executed until the prisoner signs the acknowledgement of parole conditions, Board form PBPP-11, and the Board issues its parole release order, Board form PBPP-10. Green v. Pennsylvania Board of Probation and Parole, 101 Pa. Commw. 132, 134, 515 A.2d 1006, 1008 (1986).

Here, the Board never issued a parole release order and Plaintiff never attained the status of "parolee" with respect to the parole granted by the May 17, 2012 Board decision. Therefore, the Board did not violate any of his due process rights when it rescinded its prior grant of parole based on information that Plaintiff had threatened his children's mother.

Plaintiff further seems to argue that the Board violated his rights by failing to immediately reinstate its order grating parole after it learned that Plaintiff's misconduct was

10

expunged. Specifically, Plaintiff takes issue with December 6, 2012 Board decision requiring that he be re-evaluated for parole due to the lapse in time since his last review (ECF No. 32-1, p. 2). This claim seems to invoke the constitutional right to substantive due process, which protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement it.[4] Some courts have determined that decisions to grant or deny parole may violate a prisoner's right to substantive due process if such decisions are based on arbitrary and capricious factors. The Supreme Court has declined to set forth a precise rule that defines the scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause. Nonetheless, the Court has clarified that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

Applying this standard, the United States Court of Appeals for the Third Circuit rejected substantive due process challenges to state parole board decisions in Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001), and Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002). In Coady, the prisoner insisted that the decision of the Pennsylvania Board of Probation and Parole violated substantive due process because the board used constitutionally impermissible criteria to deny parole, applied erroneous descriptions of the conduct underlying his offense, and considered false information. The Third Circuit rejected Coady's claims on the grounds that "federal courts are not authorized by the due process clause to second-guess parole boards and the requirements

---

[4] See Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process

11

of substantive due process are met if there is some basis for the challenged decision." Coady, 251 F.3d at 487.

In Hunterson v. DiSabato, the Court of Appeals reversed an order granting the writ to a New Jersey inmate who claimed that a parole board decision imposing a five-year future eligibility term was arbitrary, capricious, and an unreasonable abuse of discretion. As the Third Circuit explained:

> this type of constitutional challenge to a state [parole] proceeding is not easily mounted. We have made clear that the federal courts ... are not to second-guess parole boards, and the requirements of substantive due process are met if there is some basis for the challenged decision .... The relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times conscience shocking or deliberately indifferent.

Hunterson, 308 F.3d at 246-47 (citations and internal quotation marks omitted).

In the case at bar, Plaintiff was found guilty of Misconduct B526205 on June 28, 2012. Pursuant to its obligation, DOC reported the Hearing Examiner's findings to the Board. As a result of the notification, on July 16, 2012, the Board revoked its earlier action and denied Plaintiff parole and established a new review date of June 2013. After the misconduct was exonerated on September 11, 2012, the Board was notified. On December 6, 2012, the Board notified Plaintiff that he would be placed for review on the next available docket.

The decision to grant, rescind, or revoke parole is one purely of administrative, not judicial, discretion. Rivenbark v. Pennsylvania Board of Probation and Parole, 509 Pa. 248, 501 A.2d 1110 (1985). The Board is invested with broad discretion in determining if and when a prisoner under its jurisdiction should be released on parole. Greco v. Pennsylvania Board of

---

is protection of the individual against arbitrary action of government.").

12

Probation and Parole, 99 Pa. Commw. 107, 513 A.2d 493 (1986). Moreover, the Board must utilize specialized knowledge and expertise to assist it in making decisions whether or not to release prisoners on parole. Here, it is entirely reasonable for the Board to require that Plaintiff undergo a proper review before he is released on parole. There is nothing arbitrary about that decision. The Board may exercise the broad discretion granted it by the General Assembly and require a prisoner to be thoroughly reviewed before he is released from prison. Because such a review necessarily takes sufficient time to conduct, it cannot be said that the Board's actions in delaying his review were arbitrary in the constitutional sense. Without a doubt, the safety of the public and the interests of the Commonwealth are injured by releasing prisoners who have not complied with prescribed institutional programs, who require additional treatment programs or other types of counseling, and who have not received a favorable recommendation by DOC. As such, Plaintiff has failed to demonstrate that he is entitled to relief under the substantive prong of the Due Process Clause.

2.  Misconduct Hearing

Next, Plaintiff argues that he was entitled to due process with respect to his misconduct hearing. An inmate's due process rights are not triggered unless the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Here, Plaintiff was sanctioned to 60 days of Disciplinary Custody time as well as a 60 day mail restriction. Generally, confinement in restrictive housing for periods of up to eighteen months does not rise to the level of an atypical and significant hardship under Sandin. *See, e.g.*, Griffin v. Vaughn, 112 F.3d 703, 705-707 (3d Cir. 1997); Smith v. Mesinger, 293 F.3d 641, 654 (3d Cir. 2002).

13

Here, however, it appears that Plaintiff is claiming that the Board action in revoking its unexecuted grant of parole constitutes an atypical and significant hardship under Sandin. The Court need not resolve that question as the record clearly reflects that Plaintiff received whatever process was due as he was exonerated on appeal following an expert handwriting analysis, which confirmed that he had not written the letter. While Plaintiff complains that he was not allowed witnesses and the letter was not introduced as evidence at his hearing, nothing shows that the addition of such evidence necessarily would have guaranteed his exoneration at the hearing. Nor does Plaintiff set forth any facts that would establish a retaliatory motive behind the misconduct charge. Rather, the record reflects that the misconduct was issued after the threatening letter was discovered. Moreover, Plaintiff simply does not have any right not to be falsely accused of misconduct. The guarantee of Due Process is a flexible concept and is not amenable to rigid construction within a prison setting. Plaintiff's misconduct was expunged, the Board was notified and he has been placed on the Board's next docket for review. His minimum sentence does not expire until June 28, 2014. In light of these facts, Plaintiff does not make any showing of a procedural due process violation with respect to his misconduct hearing.

3. Retaliation

As a final mater, Plaintiff appears to be claiming that the Board action in delaying his review was done in retaliation for his filing suit against them in September of last year. "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Thus, retaliation for the exercise of a constitutionally

14

protected right may violate the protections of the First Amendment, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

With respect to the first factor, it is well settled that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right. Allah, 229 F.3d at 224-25. Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. Rauser, 241 F.3d at 333. Rather, the first requirement a Plaintiff must show is that the conduct which led to the alleged retaliation was constitutionally protected. *Id.*

The second element requires a prisoner to show that he suffered some "adverse action" at the hands of the prison officials. A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See* Allah, 229 F.3d 220 at 225. Adverse actions that are sufficient to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser, 241

F.3d at 333, and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third factor requires that there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. This may be established by evidence of a temporal proximity between the prisoner's protected activity and the defendant's adverse action; however, the timing of the alleged retaliatory action must be suggestive of retaliatory motive.

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every adverse action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Finally, allegations of *de minimis* acts of retaliation do not state a claim under § 1983. Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999); Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) (holding that a *de minimis* retaliatory act is outside the ambit of constitutional protection).

With respect to the first factor, Plaintiff claims that the Board delayed reconsideration of his parole because Plaintiff filed the instant suit against it. A prisoner's access to the courts is a

constitutional right, Bounds v. Smith, 430 U.S. 817, 821 (1977), but only if it is predicated on a "nonfrivolous" and "arguable" underlying claim. Christopher v. Harbury, 536 U.S. 403, 416 (2002). While Plaintiff did indeed file the instant suit, none of his claims survive Defendants' Motion to Dismiss. Thus, it is doubtful whether Plaintiff has alleged even the first element of a retaliation claim.

Next, Plaintiff must show that he suffered some "adverse action" that "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah, 229 F.3d at 225. Here, Plaintiff claims that the delay in his parole review constitutes adverse action. I agree with Plaintiff in this regard.

Finally, Plaintiff must prove a causal link between his exercise of his right of access to the courts and the December 6, 2012 Board action. As stated above, the Board has primary responsibility to ensure public safety in making parole determinations. The DOC recommendation was made in March of 2012 and was valid for six months. Plaintiff's misconduct was exonerated on September 11, 2012, and the Board was informed of this decision sometime thereafter. Plaintiff filed this lawsuit on September 21, 2012. Thus, it is unlikely that the Board was even aware of this lawsuit at the time of its decision on October 12, 2012 that a new hearing was required before it could re-parole Plaintiff, much less that it was a substantial factor in its decision. The lapse of approximately one month before the Board reviewed Plaintiff's parole file after it was notified that Plaintiff's misconduct had been expunged simply does not show the necessary causation to support a retaliatory motive. Thus, Defendants are entitled to judgment as a matter of law as to this claim. Cf. Edwards v. Pa. Bd. Of Prob. & Parole, 523 F.Supp.2d 462, 470 (E.D. Pa. 2007) (granting summary judgment to defendants for

Plaintiff's retaliation claim against Board for decision denying reparole).

AND NOW, this 5th day of March, 2013;

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

_____
Cynthia Reed Eddy
United States Magistrate Judge

Edward Leon Boone
JJ4437
SCI Greensburg
165 SCI Lane
Greensburg, PA 15601